MARTIN BERKAL, trustee in bankruptcy, *vs.* M. DE MATTEO
CONSTRUCTION CO.

Essex.    December 7, 1950. — May 4, 1951.

Present: QUA, C.J., WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Contract,* Building contract, Subcontract.  *Public Works.  Commonwealth,*
Security for public work.  *Payment.  Volunteer.*

Under certain provisions of a contract with the Commonwealth for public
construction work and of a subcontract for a part of such work, both
made in view of G. L. (Ter. Ed.) c. 30, § 39, as amended, the general
contractor, in a determination of the amount due from him to the
subcontractor, was entitled to credit for sums paid by the general
contractor, without the knowledge or consent of the subcontractor, in
satisfaction of indisputably valid claims filed with the department of
public works under the statute for labor and materials furnished to
the subcontractor in connection with his work under the subcontract,
even though no petition to enforce the claims was ever filed in the
Superior Court under the statute; the general contractor was not a
volunteer in making such payments.

CONTRACT.    Writ in the Superior Court dated September 23, 1948.

The action was heard by *Goldberg, J.*

*A. R. Pitcoff,* (*P. Strome* with him,) for the plaintiff.

*F. T. Leahy,* (*W. B. Shevory* with him,) for the defendant.

COUNIHAN, J.    This is an action of contract according to
an account annexed.    The defendant had a contract, here-
inafter called the prime contract, with the Commonwealth
acting through its department of public works, hereinafter
called the department, for the construction of runways at
the Logan International Airport in East Boston.    With the
approval of the department as required by this contract,
the defendant entered into a subcontract dated October 29,
1947, with Nicholas Bianco and Francis Bianco, a partner-
ship doing business as Bianco Brothers and hereinafter
called Bianco, to furnish and haul gravel to this job.    Bianco

did work under this subcontract. On March 19, 1948, Bianco was adjudicated a bankrupt and the plaintiff was appointed its trustee in bankruptcy. The action was tried to a judge without jury upon an "Agreed Statement of Facts," which incorporated the prime contract, the subcontract, and two stipulations of the parties. The judge found for the plaintiff in a sum less than that which he claimed to be due, and denied certain requests for rulings of the plaintiff. The action comes here upon exceptions of the plaintiff to the finding of the judge and the denial of the requests.

It appears from the "Agreed Statement of Facts" that Bianco earned under its contract the sum of $129,835.16, and that the defendant paid or credited Bianco the sum of $120,320.66, leaving a balance of $9,514.50. Out of this balance the defendant claims a further credit of $7,946.88, leaving a balance of $1,567.62 which it agreed was due the plaintiff. The judge found for this amount with interest.

The sum of $7,946.88 for which the defendant claims credit was paid by it on May 10, 1948, to twenty claimants who had filed claims with the department in this amount for labor and materials furnished Bianco for this job. It is agreed by the parties to this action that all of these claims were properly filed within the sixty days required by G. L. (Ter. Ed.) c. 30, § 39, as appearing in St. 1935, c. 472, § 1,[1] and that Bianco, before bankruptcy, had verified the amount of these claims. No petitions to enforce these claims were filed in the Superior Court within the time provided by statute, c. 30, § 39. Because of this statute the defendant was required to file and did file a surety bond as security for

[1] General Laws (Ter. Ed.) c. 30, § 39, as appearing in St. 1935, c. 472, § 1, so far as pertinent reads: "Officers or agents contracting in behalf of the commonwealth for the construction or repair of public buildings or other public works shall obtain sufficient security, by bond or otherwise, for payment by the contractor and sub-contractors for labor performed or furnished and for materials used or employed in such construction or repair . . . but in order to obtain the benefit of such security, the claimant shall file with such officers or agents a sworn statement of his claim, within sixty days after the claimant ceases to perform labor or furnish labor, materials . . . and shall, within one year after the filing of such claim, file a petition in the superior court for the proper county to enforce his claim or intervene in a petition already filed . . . ."

Berkal *v.* M. De Matteo Construction Co.

payment by it and by subcontractors for labor performed or furnished and materials used or employed in the performance of the prime contract. Article 82 of the prime contract provides that the department shall retain fifteen per cent of the estimated value of work done each month as additional security for the fulfilment of the prime contract.

All of the payments to the twenty claimants were made without the knowledge or consent of Bianco or of the plaintiff, who had previously made oral and written demand for the balance of $9,514.50 the recovery of which he now seeks in this action.

Article 57 [1] of the prime contract provides that the defendant shall be required to pay all bills for labor and materials contracted by it. It further provides that the Commonwealth may retain from any moneys due the defendant at any time so much of such moneys as the Commonwealth shall be of opinion will be required to settle claims for labor performed or furnished and materials used or employed in

---

[1] Article 57 so far as pertinent reads: "The Contractor shall pay all bills for labor and materials contracted by him and for the rental of appliances and equipment hired by him for or on account of the work herein contemplated. The Party of the First Part [the Commonwealth] may keep any moneys which would otherwise be payable at any time hereunder, and apply the same, or so much as may be necessary therefor, to the payment of any expenses, losses or damages incurred by the Party of the First Part and determined as herein provided, and may retain, until all claims are settled, so much of such moneys as the Party of the First Part shall be of opinion will be required to settle (1) all claims against the Party of the First Part and its officers and agents as specified in Article 56, and (2) all claims for labor performed or furnished, for materials used or employed in such construction or repair . . . said claims having been filed (a) with the Department in accordance with Section 39, Chapter 30 of the General Laws, as appearing in the Tercentenary Edition, as amended by Chapter 351 of the Acts of the year 1934, and Chapter 217 of the Acts of the year 1935 and all subsequent amendments thereto [St. 1935, c. 472, § 1], or the Party of the First Part may make such settlements and apply thereto any moneys retained under the contract. If the moneys retained under the contract are insufficient to pay the sums due under the claims for labor and materials . . . the Party of the First Part may, at its discretion, pay the same, and the Contractor shall repay to the Party of the First Part all sums so paid. The Party of the First Part may also, with the written consent of the Contractor, use any moneys retained, due or to become due under the contract, for the purpose of paying for labor and materials . . . for which claims have not been filed as specified above. It is understood that the security required by Section 39 of Chapter 30, General Laws, Tercentenary Edition is obtained both by. the bond accompanying the contract and by the power of the Party of the First Part to retain and pay money under the provisions of this article, but the release of one shall·in no way impair or discharge the other."

the work to be done under the contract, *such claims having been filed with the department in accordance with c. 30, § 39,* or the Commonwealth may make settlements of such claims and apply thereto any moneys retained under the contract. If the moneys retained are insufficient to pay the sums due under such claims, the Commonwealth may, at its discretion, pay the same and the defendant shall repay it.

In the subcontract with Bianco the prime contract was specifically referred to by name and number. Bianco expressly agreed to hold the defendant harmless from any and all claims arising out of operations under the subcontract. There was also provision that the defendant could retain a certain percentage of moneys due Bianco and pay the same to it "thirty days after the receipt of a sworn statement that all bills and other obligations have been paid in connection with this contract." No such sworn statement was ever given the defendant, and it is evident from the filing of the twenty claims that all bills had not been paid. Bianco made no provision to hold the defendant harmless on account of these bills which the defendant was obligated to pay under the terms of the prime contract and the statute, c. 30, § 39.

The plaintiff contends that the defendant had no right to pay these claims and deduct such payment from the balance due Bianco for several reasons, but principally because no petition to enforce these claims was ever filed in the Superior Court under c. 30, § 39.

This contention of the plaintiff is without merit.

The claimants to whom the defendant made payment were undoubtedly holders of equitable liens not only on the bond furnished by the defendant under the statute but also on the moneys due the defendant but retained by the Commonwealth under the prime contract. *Burr* v. *Commonwealth,* 212 Mass. 534. The prime contract provides that, before requiring such claimants to have recourse to the bond, the Commonwealth can settle with such claimants and charge such settlements to moneys retained by it and, if this sum is not sufficient, it can demand that the de-

fendant pay it any excess. In these circumstances it does not seem like common sense or good business practice to insist that the Commonwealth should first pay such claims and then deduct the amount of them from moneys due the defendant. These claims had been verified as to amounts by Bianco and they were undoubtedly due the claimants. To require that such claimants be forced to file petitions in the Superior Court to enforce their claims which were recognized as due by Bianco and by the defendant, seems to us to be entirely unnecessary. If the construction urged by the plaintiff be put upon the statute and the contracts, innocent parties who in good faith rendered service and furnished materials, relying upon the statute and the contracts that they would be secure in receiving payment, would unwarrantly be deprived of the use of moneys justly due them and be put to the expense of unnecessary litigation. The same is true of the defendant. Such a result would be to foster and promote unreasonable and undesirable litigation. Such litigation is not to be encouraged but is to be avoided by all reasonable means. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 153. *Markus* v. *Boston Edison Co.* 317 Mass. 1, 6. It has been said of a contract, "So far as reasonably practicable it should be given a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties." *Bray* v. *Hickman,* 263 Mass. 409, 412. *Waldo Bros. Co.* v. *Platt Contracting Co. Inc.* 305 Mass. 349, 355.

The purpose of the statute, c. 30, § 39, requiring claimants who have duly filed claims as called for by the statute to file petitions in the Superior Court to enforce their claims is manifestly to enable them to obtain the benefit of the statutory security, afforded in the present case by the bond filed by the defendant and by the moneys retained by the Commonwealth under the prime contract. The filing of a petition becomes necessary only when such claims are unpaid and in dispute. Where, as here, there was no controversy about the moneys due such claimants by Bianco

or by the defendant, litigation is uncalled for and serves no useful purpose.

The plaintiff also argues that these payments by the defendant were purely voluntary and therefore no credits should be allowed. It may be true that a volunteer pays at his own peril, but here the defendant was not a volunteer. The prime contract and the subcontract cannot be divorced and both are linked with the statute, c. 30, § 39. Under the statute and under the prime contract the defendant was liable for the payment of unpaid bills of claimants for work or materials furnished Bianco. The Commonwealth could rely upon the bond or itself pay these claims out of moneys due the defendant which it retained. The defendant to relieve itself under its obligations on the bond and to receive moneys due it under its contract was forced to pay these claimants. In these circumstances it seems not only harsh but against common sense and sound business judgment to call these payments voluntary. As we have said, these claimants had an equitable lien on the property of the defendant, the moneys due it from the Commonwealth. It would seem that this restraint is tantamount to a request by Bianco to pay these claims in view of the terms of the subcontract. *Goodridge* v. *Lord,* 10 Mass. 483. *Hale* v. *Huse,* 10 Gray, 99. *Keith* v. *Congregational Parish in Easton,* 21 Pick. 261.

The cases above cited indicate that there may exist circumstances whereby one who pays the debt of another without express authorization may be protected.

In any event we believe that Bianco could have had no standing to press a claim for the balance which the plaintiff alleges to be due him. The subcontract with Bianco provided explicitly that the defendant should pay any balance due only upon receipt of a sworn statement by Bianco that all bills and other obligations of it had been paid. This Bianco did not and could not furnish. The plaintiff as trustee in bankruptcy of Bianco stands in no better position than Bianco.

If the view of the plaintiff were to prevail, had the bills

of the claimants not been paid it might have put the claimants who had an equitable lien not only on the bond but upon the moneys of the defendant retained by the Commonwealth as well, in the position of general creditors of Bianco. Clearly to avoid this result the statute, the prime contract, and the subcontract provided otherwise and permitted the defendant to pay the claimants.

The plaintiff filed with the judge several requests for rulings of which the judge denied the following: "1. The plaintiff is entitled to recover the sum of . . . $9,514.50, together with interest. . . . 3. The payments made by the defendant to the claimants do not constitute valid credits in this action. . . . 5. The defendant has not maintained its burden of proof so as to prove itself entitled to credit for the payments made by it to the claimants."

There was no error in the denial of these requests.

Both parties agreed that no interest should be added in the event that the judge found for the plaintiff for the amount which the defendant admitted to be due. By inadvertence the judge added interest.

Accordingly the exceptions of the plaintiff are overruled and judgment should be entered for the plaintiff in the sum of $1,567.62.

*So ordered.*