GEORGE E. DUTEAU *vs.* NICHOLAS SALVUCCI & others.

Suffolk. October 8, 1953. — November 9, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Public Works. Surety. Employment Security,* Collection of contributions.

Even if it were assumed that work performed by a claimant for a contractor in unloading crushed stone at a railroad siding and transporting it to the site of highway construction undertaken by the contractor for the Commonwealth was covered by the security obtained pursuant to G. L. (Ter. Ed.) c. 30, § 39, as amended, by the officers contracting in behalf of the Commonwealth, the claimant was barred from recourse to the statutory security for payment for such work where he did not file a sworn statement of his claim until more than sixty days after such work had ended. [533–534]

Furnishers of labor, materials and hired equipment, as the statutory beneficiaries for whom security was obtained pursuant to G. L. (Ter. Ed.) c. 30, § 39, as amended, by officers contracting in behalf of the Commonwealth for highway construction, had rights superior to those of other creditors of the contractor in a sum earned by him under the contract but retained by the Commonwealth as part of such security. [535]

The Commonwealth as a judgment creditor of a contractor for contributions owed under the employment security law was not a statutory beneficiary of security obtained pursuant to G. L. (Ter. Ed.) c. 30, § 39, as amended, by officers contracting in behalf of the Commonwealth with him for highway construction. [536]

After the surety on a bond, given by a contractor with the Commonwealth for highway construction and constituting, together with a sum earned by the contractor but retained by the Commonwealth, the security for payment of claims of furnishers of labor, materials and hired equipment required by G. L. (Ter. Ed.) c. 30, § 39, as amended, had paid all but one of the valid claims of the statutory beneficiaries in an aggregate amount exceeding such retained sum and the remaining claim had been satisfied out of the retained sum, the surety was entitled to the entire balance of the retained sum without deduction of the amount of a judgment obtained by the Commonwealth against the contractor for contributions owed under the employment security law. [534, 536]

BILL IN EQUITY, filed in the Superior Court on August 1, 1950.

The suit was heard by *O'Connell,* J., upon a master's report. The Commonwealth and Gallo Construction Co., Inc., appealed from the final decree.

*Joseph E. Levine,* for Gallo Construction Co., Inc.

*John V. Phelan,* Assistant Attorney General, for the Commonwealth.

*Samuel H. Cohen,* (*Herbert L. Crimlisk* with him,) for New Amsterdam Casualty Company.

RONAN, J. This is a bill in equity brought by one Duteau under G. L. (Ter. Ed.) c. 30, § 39, as appearing in St. 1935, c. 472, § 1, to obtain payment for labor furnished and equipment supplied to the individual defendants in the performance of a contract made on July 26, 1949, by the Commonwealth with them for the construction of a section of the Mid-Cape Highway, so called, in which the officers contracting in behalf of the Commonwealth were given the right (which they exercised) to retain a certain percentage of the amounts earned by those defendants. They also in accordance with § 39 took a bond issued by the defendant casualty company. The sum retained and the bond constitute security for the payment of those who furnished labor or supplied materials or who let for hire certain equipment in the performance of the work required to be done in the completion of the contract. Several corporations which furnished labor or supplied materials or such equipment were allowed to intervene, including Gallo Construction Co., Inc., hereinafter called Gallo.[1] The case was referred to a master whose report was confirmed, and a final decree was entered establishing the indebtedness of the individual defendants to Gallo in the amount of $19,129.26 and the right of Gallo to have recourse to the security in the amount of $6,236.02, and ordering the Commonwealth to pay this amount to

---

[1] We need not decide whether the unloading or transportation of stone by Gallo is of such a nature as to come within the statute and permit Gallo to have recourse to the security for payment, as Gallo is barred therefrom as will hereafter appear. We therefore speak in general of laborers and materialmen in discussing the statute.

Gallo out of the funds the Commonwealth had amounting to $99,534.53 and to pay the balance of $93,298.51 to the casualty company. All valid claims payable out of the security have been paid except that of Gallo.

The master found that Gallo commencing on October 18, 1949, embarked upon a continuing arrangement with the individual defendants to rent to them whatever road building equipment they needed if it was not already in use by someone else. No express contract with reference thereto was made. The master states that such an agreement was implied from the uniform nature and course of their dealings which he sets forth in much detail in his report. The parties continued in accordance with this arrangement until it terminated within sixty days before July 20, 1950, when Gallo filed a sworn statement of its claim. The allowance of this claim for $6,236.02 to be paid out of the security is not disputed by any of the parties.

In November, 1949, Gallo and the individual defendants made a contract for unloading crushed stone by Gallo at its railroad siding and transporting it to the site of the work at an agreed price. This unloading commenced on April 10, 1950, and ended on May 8, 1950. The master found that this work was performed under a separate express contract which was in no way connected with the implied continuing contractual arrangement which he found existed with reference to the rental of the Gallo equipment. He found that the individual defendants owed Gallo $10,726.55 for the unloading and transportation of the stone but that Gallo had no right to reach the security because its sworn statement filed on July 20, 1950, was more than sixty days after the contract had been performed.

The only ground of Gallo's appeal is that it should have been allowed to share in the security also in the amount just mentioned. If we assume that the unloading and transportation of the stone which went into the construction of the public way were work of such a character that it came within the description of work for the payment of which recourse could be had to the statutory security (see

now G. L. [Ter. Ed.] c. 30, § 39A, inserted by St. 1951, c. 694), in order to reach the security for the satisfaction of its claim it was necessary to file a sworn statement of its claim "within sixty days after the claimant ceases to perform labor or furnish labor, materials, appliances and equipment." G. L. (Ter. Ed.) c. 30, § 39. *Mario Pandolf Co. Inc.* v. *Commonwealth,* 303 Mass. 251. *Massachusetts Gas & Electric Light Supply Co.* v. *Rugo Construction Co. Inc.* 321 Mass. 20.

The second question arises out of an appeal by the Commonwealth from the final decree dismissing its petition to intervene.

In view of the conclusion we reach in this intervening petition, we need not decide whether the Commonwealth was a proper party intervener. See *Old Colony Crushed Stone Co.* v. *Cronin,* 276 Mass. 221, 227.

The Commonwealth contends that it is entitled to have set off or deducted from the retained cash percentage an outstanding execution amounting to $1,841.26 which the Commonwealth, through its division of employment security, obtained for "contributions" or taxes owed by the individual defendants under G. L. (Ter. Ed.) c. 151A (as revised by St. 1941, c. 685, § 1), §§ 15, 16, and 17, as amended. It makes no contention that its claim as a judgment creditor of these defendants has priority over the claim of Gallo as allowed by the final decree but it insists that its judgment for the employment security taxes has priority over the rights of the casualty company to participate in the distribution of the cash retained by the Commonwealth and therefore that the final decree was wrong in ordering the Commonwealth to pay to the casualty company all this retained fund remaining after the payment to Gallo.

The bond and the sum retained by the Commonwealth together constituted the statutory security taken by those who contracted in behalf of the Commonwealth in accordance with G. L. (Ter. Ed.) c. 30, § 39, as appearing in St. 1935, c. 472, § 1, "for payment by the contractor and subcontractors for labor performed or furnished and for mate-

rials used or employed" in the construction or repair of public buildings or other public works. Laborers and materialmen can have no private lien upon public property, and the object of the statute is to furnish an equitable interest in the security taken by the public officers. The remedy created by this statute does not extend to the general contractor. He needs no such remedy as he deals directly with the Commonwealth to which he may look for payment. Compliance with the terms of the statute by filing seasonably sworn statements of their claims gives to laborers and materialmen an equitable interest in the security. *Nash* v. *Commonwealth*, 174 Mass. 335. *Burr* v. *Massachusetts School for the Feeble-Minded*, 197 Mass. 357. *Cook Borden & Co. Inc.* v. *Commonwealth*, 293 Mass. 174. *Berkal* v. *M. De Matteo Construction Co.* 327 Mass. 329, 332. The statutory beneficiaries for whom the security was created are laborers and materialmen, and although the assignees of their claims may have recourse to the security, *Dolben* v. *Duncan Construction Co.* 276 Mass. 242; *Barry* v. *Duffin*, 290 Mass. 398, the rights of general creditors of the principal contractor are subordinate to the rights of the statutory beneficiaries in the security until the indebtedness of the latter has been paid. *Old Colony Crushed Stone Co.* v. *Cronin*, 276 Mass. 221. *Newbury* v. *Lincoln*, 276 Mass. 445. Where the security is held primarily for the benefit of a particular class, other persons have no rights in the security until the claims of the nature described in the statute of all the members of the class have been satisfied. In *J. H. McNamara, Inc.* v. *McGuire*, 254 Mass. 589, the rights of laborers and materialmen were held superior to the right of the city to apply any part of the retained percentage in reduction of the damage sustained by the city by reason of the general contractors abandoning their contract. It was said at page 594, "Where the law requires one person to obtain security for the benefit of others, that person cannot himself share in it until those for whom he is bound to obtain it have had the full benefit intended to be secured to them." One who had furnished material but

failed to file a sworn statement on time could not acquire rights in the security equal or superior to the rights of those who had properly filed statements of their claims. *Commercial Casualty Ins. Co.* v. *Murphy,* 282 Mass. 100. See also *Hub Steel & Iron Works, Inc.* v. *Dyer,* 283 Mass. 463.

The Commonwealth finally contends that the casualty company, having guaranteed payments, should not be permitted to share pro rata in the distribution of assets of the debtor until the creditors whose payments it had guaranteed have been paid. This principle has frequently been applied. See *Commissioner of Insurance* v. *Conveyancers Title Ins. & Mortgage Co.* 300 Mass. 457, 467; *Delaware & Hudson Co.* v. *Boston Railroad Holding Co.* 328 Mass. 63, 76–77. It should be noted, however, that there is no controversy here between the casualty company and those having claims the payment of which it guaranteed. Every claimant entitled to reach the security has been paid with the exception of Gallo. The amount of its claim and its right to be paid by the Commonwealth out of the retained funds have now been adjudicated. The casualty company never agreed to pay all creditors of the general contractors but agreed to pay only those having claims of the kind defined in G. L. (Ter. Ed.) c. 30, § 39, as amended. The judgment for the unpaid employment security contributions or taxes is not a claim so defined. Finally, the Commonwealth held the funds in the nature of a trust for the benefit of those described in the statute and would have no right to use them for any other purpose. The casualty company is seeking to enforce its rights not merely as a surety but as the holder of valid claims against the retained percentage for which it paid $145,778.74. We need not decide as against this intervener, what rights, if any, the casualty company had by virtue of the indemnity contract executed between it and the individual defendants when the bond was issued.

It is true that the Commonwealth has a lien upon the property of an employer with certain exceptions, G. L. (Ter. Ed.) c. 151A, § 16, and that by § 17 taxes and interest

thereon "shall have priority over all other claims against an employer, except wage claims." The taxable event under this chapter is the hiring of employees, and the purpose of the chapter is to aid those out of work by reason of economic conditions. *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 282–283. *Steward Machine Co.* v. *Davis*, 301 U. S. 548. The object of G. L. (Ter. Ed.) c. 30, § 39, is to secure payment for those who furnish labor and materials to the contractor or subcontractor in the construction or repair of public works undertaken upon the credit of the Commonwealth. These statutes have different aims and objects and are separate from and independent of each other. They are concerned with different means of increasing the public welfare. One is for the benefit of employees, and the other to aid laborers and materialmen. Each must be confined to its own particular field and construed harmoniously with the other. *Brooks* v. *Fitchburg & Leominster Street Railway*, 200 Mass. 8, 17. *Commonwealth* v. *Welosky*, 276 Mass. 398, 402–403. *Smith* v. *Director of Civil Service*, 324 Mass. 455, 458.

No funds were earmarked for the benefit of the individual defendants. They had no right to collect any sums that might be due until the claims of the laborers and materialmen had been paid. On this record it appears that the amount of valid claims exceeded the cash retained and it is hard to see on what a lien could be imposed for the collection of the employment security taxes owed by the individual defendants.

Laborers and materialmen have a right to look to the security taken for the payment of their claims and to expect that this security will not be lessened to their disadvantage by payments therefrom to others than those who are the statutory beneficiaries under said § 39.

*Decree affirmed.*